IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| INNOVATIVE ENVIRONMENTAL TECHNOLOGIES, INC., and PROVECTUS ENVIRONMENTAL PRODUCTS, INC., <br><br> *Plaintiffs,* <br><br> v. <br><br> TOTAL PETROCHEMICALS & REFINING USA, INC., and RETIA, LLC, <br><br> *Defendants.* | CIVIL ACTION <br> NO. 18-3211 |

**PAPPERT, J.**                                                                April 17, 2019

**MEMORANDUM**

Innovative Environmental Technologies, Inc., and its licensee Provectus Environmental Products, Inc., sued Total Petrochemicals & Refining USA, Inc., and its subsidiary Retia, LLC for patent infringement. During the period of the alleged infringement, the patent was reexamined. Defendants move to dismiss for failure to state a claim, arguing that they cannot be liable for infringement because the patent's claims were substantively changed during reexamination. Plaintiffs contend that claim construction is required before such a determination can be made. The Court agrees with Plaintiffs and denies the Motion for the reasons that follow.

I

IET owns Patent No. 7,531,709 (the "'709 patent"), which relates to a method for "accelerated dechlorination of subsurface matter by anaerobic microorganisms in conjunction with oxygen scavengers, vitamins, nutrients and zero valent metals."

1

(Compl. ¶¶ 9, 11, 13, ECF No. 1.) IET assigned Provectus the "exclusive right to issue sublicense" for the '709 patent. (*Id.* at ¶ 10.)

In April of 2017, Retia solicited Requests-For-Proposals for a remediation project. (*Id.* at ¶ 20.) From June to July of 2017, IET submitted and amended three proposals, citing the '709 patent as a key technology that would be utilized during the execution of the project. (*Id.* at ¶¶ 20–24). Some months later, the project was awarded to a different company, ISOTEC. (*Id.* at ¶ 31.)[1]

A request for *ex parte* reexamination of the '709 patent was filed on August 18, 2017 and granted two months later. (*Id.* at ¶ 14.) On July 16, 2018, the U.S. Patent and Trademark Office issued an *Ex Parte* Reexamination Certificate, finding that the '709 patent's claims were valid and patentable. (*Id.* at ¶ 16.) Claim 1 was among the claims amended during reexamination. Original Claim 1 stated:

> A method for accelerated anaerobic dechlorination of subsoil matter, comprising the steps of:
> supplying a mixture including a zero valent metal into soil pathways to biologically react with the dissolved chlorinated solvents in the groundwater; and
> supplying an organic hydrogen donor into the soil pathways to produce dechlorinating conditions such that indigenous anaerobic bacteria biodegrade residual concentrations of chlorinated solvents.

(*Id.* at Ex. A.) After reexamination, Amended Claim 1 stated:

> A method for accelerated anaerobic dechlorination of subsoil, comprising the steps of:
> supplying a mixture including a zero

---

[1] The Complaint does not state when IET was not awarded the project, nor could Defendants recall the date. *See* (Hr'g Tr. 37:15–25, Mar. 12, 2019, ECF No. 21).

    valent metal into permeable
    pathways in the subsoil that
    chlorinated solvents have migrated
    to in order to reduce concentrations
    of dissolved chlorinated solvents in
    the groundwater via chemical
    reactions with a surface of the
    zero valent metal providing a
    hydrogen source via hydrolysis of
    the groundwater at the surface of
    the zero valent metal and evolution
    of hydroxides; and

  supplying an organic hydrogen donor
    into the permeable pathways
    provide a hydrogen source via
    fermentation of the organic
    hydrogen donor and produce
    dechlorinating conditions such that
    indigenous anaerobic bacteria
    biodegrade residual concentrations
    of chlorinated solvents, wherein
    combined use of the zero valent
    metal and the organic hydrogen
    donor together in the permeable
    pathways accelerate dechlorination
    of contaminants in the subsoil and
    dechlorinate intermediates of the
    chlorinated solvents.

(*Id.* at ¶ 17.)  On July 27, 2018, Plaintiffs sued Defendants for patent infringement, alleging that they allowed ISOTEC to utilize technology protected by the '709 patent without a license.  (*Id.* at ¶¶ 35–39.)

II

  To survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that

[a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether a complaint will survive a motion to dismiss. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it must identify the allegations that are no more than legal conclusions and thus "not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, where the complaint includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

III

Under the doctrine of absolute intervening rights, a patent owner which amends its claims during reexamination proceedings is not entitled to damages prior to the issue date of the reexamination certificate unless the original and amended claims are "substantially identical." 35 U.S.C. §§ 252, 307(b). Defendants argue that they cannot be liable for any alleged infringement occurring before the *Ex Parte* Reexamination Certificate was issued on July 16, 2018 because Amended Claim 1 of the '709 patent is not substantially identical to Original Claim 1. (Mot. Dismiss at 1.) Plaintiffs do not dispute that the Claim 1 was amended; they argue that the amendments merely clarified Original Claim 1. (Resp. Opp'n at 7–12, ECF No. 11.) Plaintiffs contend that a

claim construction hearing is necessary to determine whether Claim 1 was substantively changed during reexamination. (*Id.* at 1.)

There is no *per se* rule for determining whether an amended claim is substantially identical to an original claim. *Bloom Eng'g Co., Inc. v. N. Am. Mfg. Co.*, 129 F.3d 1247, 1250 (Fed. Cir. 1997). "Identical" means "without substantive change." *Laitram Corp. v. NEC Corp.*, 163 F.3d 1342, 1346 (Fed. Cir. 1998) (citation omitted). In determining whether substantive changes have been made, courts assess the scope of the claims. *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987). An amendment that clarifies the text of the claim or makes it more definite without affecting its scope is generally viewed as identical. *Kaufman Co. v. Lantech, Inc.,* 807 F.2d 970, 977 (Fed. Cir. 1986). However, because amendments made to overcome a prior art rejection during reexamination are "a highly influential piece of prosecution history," it is "difficult to conceive of many situations in which the scope of a rejected claim that became allowable when amended is not substantively changed by the amendment." *Laitram*, 163 F.3d at 1348. But even amendments made after a prior art rejection "do not necessarily compel a conclusion that the scope of the claims has been substantively changed." *Convolve*, 812 F.3d at 1322. Courts are tasked with "analyz[ing] the claims of the original and the reexamined patents in light of the particular facts, including the prior art, the prosecution history, other claims, and any other pertinent information." *Laitram Corp. v. NEC Corp.*, 952 F.2d 1357, 1362–63 (Fed. Cir. 1991).

"[N]umerous courts have held that the inquiry of whether two claims are identical should not occur until after formal claim construction." *Etagz, Inc. v.*

5

*Quiksilver, Inc.,* No. 10–0300, 2012 WL 2135497, at *2 (C.D. Cal. June 11, 2012); *see also Visual Interactive Phone Concepts, Inc. v. U.S. Cellular Corp.*, No. 11 C 5289, 2014 WL 561731, at *5 (N.D. Ill. Feb. 13, 2014) ("The appropriate time to resolve this dispute over the scope of [Plaintiff's] original claims—and, by extension, whether [the Plaintiff] substantively changed its claim during reexamination—is during claim construction proceedings in this case.") Defendants acknowledge that "it's fairly rare" to determine at the motion to dismiss stage whether a claim was substantively changed during reexamination, *see* (Hr'g Tr. 4:20–5:3), and their arguments fall short of convincing the Court that this is one of those rare occasions. Defendants highlight the fact that ninety-three words were added to and eight were deleted from Original Claim 1. (Mot. Dismiss at 9.) But courts consider "whether the *scope* of the claims are identical, not merely whether different words are used." *Laitram,* 163 F.3d at 1346 (emphasis in original). Defendants also argue that Claim 1 was amended to overcome prior art rejections, strongly indicating that substantive changes were made. *See* (Hr'g Tr. 12:17–13:19, 14:8–13, 29:5–30:10). The court in *R&L Carriers, Inc. v. Qualcomm, Inc.*, however, emphasized that the "purpose for the amendment is irrelevant" to the inquiry. 801 F.3d 1346, 1350–51 (Fed. Cir. 2015).

  Defendants rely upon two cases, both of which are distinguishable from this one. In *Waters Technologies Corporation v. Aurora SFC Sys. Inc.*, the defendant filed a motion to dismiss arguing that a "substantive limitation" was added to the amended claims, which now included a differential pressure transducer. No. CV 11-708, 2017 WL 3598648, at *3 (D. Del. Aug. 21, 2017). The court agreed, finding that it was "not plausible to infer that there were no substantive changes made." *Id.* But the plaintiff

there never contended the claims were identical; it "only argue[d] that this decision [was] premature." *Id.* In *Infinity Computer Products v. Toshiba American Business Solutions*, the court held a claim construction hearing before granting the defendants' motion for partial summary judgment. No. CV 12-6796, 2018 WL 1083885, at *4 (E.D. Pa. Feb. 27, 2018, ECF Nos. 135, 156 & 157).

Stated very generally, the parties' dispute centers on whether three categories of amendments to Claim 1 were substantive changes, specifically: "soil pathways" in Original Claim 1 and "permeable pathways" in Amended Claim 1; biological reactions in Original Claim 1 versus chemical reactions in Amended Claim 1 and the addition of the "wherein clause" to Amended Claim 1. (Mot. Dismiss at 13–18; Resp. Opp'n at 8–11.) At oral argument, Defendants and Plaintiffs explained their positions with references to "halogenated hydrocarbon," "anaerobic corrosion" and "sodium sulfate bioslurry solution injection." *See* (Hr'g Tr. 51:23, 53:3–5). Given the acknowledged rarity of courts resolving these cases at the motion to dismiss stage and the purported complexity of the technology at issue, the Court cannot determine whether Claim 1 was substantively changed during reexamination without discovery and a claim construction hearing.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.